IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES KALEB VANLANDINGHAM, Administrator for the Estate of Charles Lamar Vanlandingham,<br><br>   Plaintiff,<br><br>v.<br><br>CITY OF OKLAHOMA CITY, *et al.*,<br><br>   Defendants. | Case No. CIV-22-209-D |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 32], filed by Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten under Fed. R. Civ. P. 12(b)(6). The movants (collectively, "Firefighters") are employees of the Oklahoma City Fire Department who responded to a call for medical assistance to Plaintiff's decedent, Charles Lamar Vanlandingham ("Mr. Vanlandingham"). Plaintiff brings claims against Firefighters under 42 U.S.C. § 1983 for alleged violations of the decedent's Fourth Amendment rights. Firefighters assert that the allegations of the Second Amended Complaint fail to state a constitutional claim against them and, alternatively, they are entitled to qualified immunity. Plaintiff has filed a timely Response [Doc. No. 38], to which Firefighters have replied [Doc. No. 39].

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  In evaluating a complaint, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679; *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008).  In § 1983 cases, it is particularly important for a complaint "to provide each individual [defendant] with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50 (emphasis omitted); *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

Where a defendant asserts qualified immunity, the plaintiff must overcome this defense.  "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stewart v. Beach*, 701 F.3d 1322, 1331 (10th Cir. 2012).  "The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

## Plaintiff's Allegations[1]

In the early morning hours of September 15, 2019, Mr. Vanlandingham experienced a seizure, and a friend made a 9-1-1 emergency call for medical assistance. The first responders to arrive were paramedics from an ambulance service (Defendant American Medical Response Ambulance Service, Inc.), followed a short time later by Firefighters. The paramedics took "charge of the scene because the call was for a medical emergency." *See* 2d Am. Compl. ¶ 18.

When the responders arrived, Mr. Vanlandingham's seizure was subsiding, and "he was in a postictal state." *Id*. ¶ 21.[2] As a result, "Mr. Vanlandingham was not aware of his surroundings." *Id*. ¶ 22. Contrary to "common medical procedures [and] protocol standards," the paramedics and Firefighters tackled Mr. Vanlandingham, and Firefighters "proceeded to pin Mr. Vanlandingham to the ground facedown." *Id*. ¶¶ 23-24. Acting together while Mr. Vanlandingham was lying in this position with his hands behind his back, Firefighters "held Mr. Vanlandingham's legs, sat on his lower back while pushing

---

[1] Consistent with the standard of decision, all factual allegations of Plaintiff's pleading are accepted as true.

[2] This state "is characterized by disorienting symptoms such as confusion." *See* Waleed Abood & Susanta Bandyopadhyay, *Postictal Seizure State*, National Institute of Health (July 12, 2022), https://www.ncbi.nlm.nih.gov/books/NBK526004. As a practical matter, "the postictal state [ends] when it is safe for the patient to return to activity without risking his/her or other's safety." *Id*.

3

down on Mr. Vanlandingham's upper back, placed a knee on Mr. Vanlandingham's shoulder and neck area, and used their hands to press down on the back of Mr. Vanlandingham's head." *Id*. ¶¶ 25-26.  After Mr. Vanlandingham was pinned down, a police officer (Defendant Brandon Lee) arrived, and Firefighters asked the officer to handcuff Mr. Vanlandingham, even though he was experiencing a medical emergency and "had committed no crime."  *Id*. ¶¶ 27-28, 30. "Officer Lee proceeded to place handcuffs on Mr. Vanlandingham, further restraining Mr. Vanlandingham's movement."  *Id*. ¶ 29.

During the incident, "Mr. Vanlandingham repeatedly screamed out in pain and yelled for help while he suffered under the weight of [Firefighters] as they continued to pin down Mr. Vanlandingham's legs, hips, back, and head," and one of them responded by yelling at Mr. Vanlandingham to "quit" and "hold still" and saying, "you're not going to buck me off." *Id*. ¶¶ 32-33.  Mr. Vanlandingham's facedown position with hands cuffed behind his back and Firefighters weighing him down lasted over ten minutes and restricted Mr. Vanlandingham's airflow.  The paramedics did nothing to alleviate the airflow restriction but, instead, made the situation more dangerous by administering a sedative drug to Mr. Vanlandingham.  The physical restrictions combined with the effect of the sedative caused Mr. Vanlandingham to lose consciousness and stop breathing.  He "died on the floor of his friend's home without ever being transported to a hospital."  *Id*. ¶ 44. Firefighters "did not get off Mr. Vanlandingham's back until after he stopped breathing" and "did nothing to maintain or monitor Mr. Vanlandingham's airway and breathing during his facedown restraint."  *Id*. ¶¶ 46-47.

Plaintiff seeks to recover damages under § 1983 for Mr. Vanlandingham's injuries and loss of life based on allegations that Firefighters and Officer Lee "while operating under color of law, violated Mr. Vanlandingham's constitutional rights by unlawfully seizing Mr. Vanlandingham and by using excessive force during his detention." *Id*. ¶ 50. As framed by the Second Amended Complaint, Plaintiff's theories of § 1983 liability are that Firefighters violated Mr. Vanlandingham's Fourth Amendment rights in three ways: 1) effecting an unlawful and unreasonable seizure by restraining Mr. Vanlandingham "without probable cause or reasonable suspicion," *id*. ¶ 54 (First Claim); 2) using excessive force against Mr. Vanlandingham by holding him "down with their body weight for over ten (10) minutes while they slowly suffocated him and stopped his heart," *id*. ¶ 62 (Second Claim); and 3) conspiring to deprive Mr. Vanlandingham of his constitutional rights to be free from unlawful arrest and excessive force, *id*. ¶¶ 65-67 (Third Claim). Plaintiff also claims that "one or more of the Defendants," who are not identified, failed to intervene "during the constitutional violations described herein" to prevent the violation of Mr. Vanlandingham's constitutional rights by others. *Id*. ¶¶ 70-72 (Fourth Claim).

By their Motion, Firefighters challenge the sufficiency of the Second Amended Complaint to state a claim against them. Further, if the Court finds a claim is stated, Firefighters challenge Plaintiff's ability to show that the right they allegedly violated was clearly established under the circumstances.[3]

---

[3] Firefighters also assert that no official-capacity suit can be brought against them. Plaintiff disclaims any intention of suing Firefighters in their official capacities. *See* Pl.'s Resp. Br. at 14. His pleading specifically states Firefighters are sued in their individual capacities. *See* 2d Am. Compl. ¶¶ 6-9. Thus, the Court finds no official-capacity issue to be decided.

**Discussion**

A.   **Constitutional Violation**

The Fourth Amendment protects individuals from unlawful seizures and, as pertinent here, guarantees rights not to be detained without reasonable suspicion of criminal activity and not to be subjected to excessive force. Plaintiff claims Firefighters lacked any basis to restrain Mr. Vanlandingham and they used excessive force against him during the restraint. In argument, Plaintiff seems to concede that the factual and legal premise of these claims is that Firefighters acted in a law enforcement role during their encounter with the decedent.[4] Although he argues that "the finding of an unlawful seizure, or other constitutional violation, does not turn on the employment of the state actor doing the seizing," Plaintiff relies on case law holding that the Fourth Amendment applies where the state actor is acting in a law enforcement capacity. *See* Pl.'s Resp. Br. at 6 (citing *McKenna v. Edgell*, 617 F.3d 432, 438-39 (6th Cir. 2010); *Peete v. Metro. Gov't of Nashville Cnty.*, 486 F.3d 217, 221-22 (6th Cir. 2008); *Judd v. City of Baxter*, 780 F. App'x 345, 349 (6th Cir. 2019) (unpublished); *Pena v. Givens*, 637 F. App'x 775, 781 (5th Cir. 2015) (unpublished). The Court accepts Plaintiff's position as stated in his brief that

---

[4] Plaintiff contends "the facts alleged demonstrate that Defendant Firefighters were acting in a law-enforcement capacity" and "Plaintiff has pled sufficient facts to establish Defendant Firefighters were acting in a law-enforcement capacity." *See* Pl.'s Resp. Br. at 2. In his legal argument regarding unlawful seizure, Plaintiff states: "In the context of a medical emergency, a seizure occurs . . . when the state actor acted in a law-enforcement capacity rather than an emergency-medical-response capacity." *Id*. at 6. And regarding excessive force, Plaintiff argues: "Paring [sic] this prone restraint excessive force analysis with the above cited cases establishing that any state actor can be liable for constitutional violations when they are acting in a law-enforcement capacity, it is clear that Plaintiff has alleged a cognizable claim for excessive force against Defendant Firefighters." *Id*. at 9.

6

conduct in "a law-enforcement capacity rather than an emergency-medical-response capacity" is required to implicate the Fourth Amendment.   *See* Pl.'s Resp. Br. at 6.

Upon consideration, the Court finds that the Second Amended Complaint lacks sufficient factual allegations to state a plausible Fourth Amendment claim on this basis. Plaintiff argues that, rather than rendering aid to Mr. Vanlandingham in a manner that would be "reasonable actions of firefighters in an emergency-medical-response capacity, Defendant Firefighters continued to sit on and restrain Mr. Vanlandingham in a prone position waiting for law enforcement to arrive."   *See id*. at 7.   Plaintiff makes this argument without any citation to his pleading.

After examining the Second Amended Complaint, the Court finds no factual basis for Plaintiff's suggestion that Firefighters had any interaction or communication with a law enforcement officer or agency before Officer Lee arrived on the scene.   Even then, the Second Amended Complaint states that Firefighters asked Officer Lee to assist them in restraining Mr. Vanlandingham, not the other way around.   *See* 2d Am. Compl. ¶ 28 (Firefighters "asked Officer Lee to handcuff Mr. Vanlandingham").   There is no factual basis in the Second Amended Complaint to suggest Firefighters were reacting to or investigating possible criminal activity.   According to Plaintiff's allegations, the paramedics and Firefighters both arrived at the scene in response to an emergency call for medical assistance, and the paramedics took charge of the situation as a medical matter when they found Mr. Vanlandingham in a postictal seizure state, unaware of his surroundings.   Although Plaintiff alleges the medical responders acted incompetently or negligently in restraining Mr. Vanlandingham, Plaintiff provides no facts from which to

conclude they assumed a law enforcement role.  *See Peete*, 486 F.3d at 222 (paramedics did not violate Fourth Amendment by restraining person when responding to medical emergency call regarding epileptic seizure; "[t]hey were not acting to enforce the law, deter or incarcerate"); *see also McKenna*, 617 F.3d at 439-40 (Fourth Amendment claim turned on whether police officers "acted in a law-enforcement (e.g., investigative or prosecutorial) capacity" or emergency-medical-response capacity).

Accepting the factual allegations of the Second Amended Complaint and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege sufficient facts to show a Fourth Amendment violation by Firefighters.  Therefore, the Court finds that the Second Amended Complaint fails to state a plausible § 1983 claim of unlawful seizure or excessive force against Firefighters.

**B.   Qualified Immunity**

If Plaintiff had alleged the violation of a constitutional right, the Court would also find that Plaintiff's allegations are insufficient to overcome Firefighters' defense of qualified immunity because the Fourth Amendment right asserted was not clearly established in September 2019.

In assessing qualified immunity, a right can be clearly established through a factually similar decision from binding precedent or the weight of authority from other courts.  *Brown v. Flowers*, 974 F.3d 1178, 1184 (10th Cir. 2020); *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018).  "[A] case directly on point" is not required, but the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per

8

curiam); *accord District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). "To determine whether a right is defined with sufficient specificity, we consider the 'specific context of the case.'" *Brown*, 974 F.3d at 1184 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "[S]pecificity is especially important in the Fourth Amendment context." *Mullenix*, 577 U.S. at 12. The Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Wesby*, 138 S. Ct. at 591 (quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017)).

Plaintiff identifies no Supreme Court, Tenth Circuit, or other federal court decision that would have made clear to a reasonable person in Firefighters' positions that their conduct toward Mr. Vanlandingham violated the Fourth Amendment. The Court's survey of caselaw also reveals no decisional precedent from which Firefighters would have known that the Fourth Amendment was implicated under the circumstances of responding to an emergency medical call to assist Mr. Vanlandingham with his seizure. The Court finds that here, as in *Pena*, Plaintiff "points to no controlling authority – or a robust consensus of persuasive authority, suggesting that medical personnel 'seize' patients when restraining them in the course of providing treatment." *See Pena*, 637 F. App'x at 781 (internal quotation and citation omitted); *see also Thompson v. Cope*, 900 F.3d 414, 422 (7th Cir. 2018) (law was not clearly established "that a paramedic 'seizes' an arrestee and is subject to Fourth Amendment limits on excessive force by sedating the arrestee").

Plaintiff argues that the federal appellate decisions of the Fifth, Sixth and Seventh Circuits cited above establish "that emergency responding state actors can be liable for Fourth Amendment violations when acting in a law-enforcement capacity." *See* Pl.'s Resp. Br. at 12. Plaintiff contends these cases put Firefighters on notice that stepping into a law-enforcement role to effectuate a seizure would violate the Fourth Amendment.[5] However, as discussed *supra*, the Court finds insufficient factual allegations in the Second Amended Complaint to support a reasonable inference that Firefighters were acting in a law-enforcement role.

The Court therefore finds that Firefighters are entitled to qualified immunity from individual liability for the § 1983 claims asserted against them for an unlawful detention of, or use of unreasonable force against, Mr. Vanlandingham.

**C.  Conspiracy**

Plaintiff claims that Firefighters through concerted activity engaged in a conspiracy to violate Mr. Vanlandingham's Fourth Amendment rights. However, the same qualified immunity principles that bar Plaintiff's § 1983 claims based on Firefighters' alleged violations of the Fourth Amendment require the dismissal of his § 1983 civil-conspiracy claim as well. *See Frasier v. Evans*, 992 F.3d 1003, 1023-24 (10th Cir. 2021). Specifically, where "there was no clearly established law that the alleged object of the officers' conspiracy was actually unconstitutional . . . , the officers are entitled to qualified

---

[5] Specifically, Plaintiff argues that his allegations "demonstrate that by the end of the encounter, [Firefighters] were acting in conjunction with Officer Lee to deter, punish, and incarcerate Mr. Vanlandingham." *See* Pl.'s Resp. Br. at 13. This argument is unsupported by any reference to the factual allegations of Plaintiff's pleading.

immunity for any such conspiracy." *Id*. at 1024 (citing *Snell v. Tunnell*, 920 F.3d 673, 702 (10th Cir. 1990) and *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020)). Under *Frasier*, 922 F.3d at 1024, where Firefighters are entitled to qualified immunity on Plaintiff's Fourth Amendment claims "based on the absence of clearly established law, it necessarily follows that they are also entitled to qualified immunity on his conspiracy claim insofar as it alleges a conspiracy" to violate the Fourth Amendment.

Accordingly, for the reasons stated *supra* regarding Plaintiff's Fourth Amendment claims, the Court finds that Firefighters are entitled to qualified immunity from Plaintiff's § 1983 conspiracy claim and, thus, Plaintiff has failed to state a plausible civil conspiracy claim against Firefighters.

**D.     Failure to Intervene**

Finally, Plaintiff asserts that Firefighters have overlooked his Fourth Claim based on a theory of § 1983 liability where state actors are present when excessive force is used and have a reasonable opportunity to intervene but fail to prevent a constitutional violation by other officers.[6] It is true that Firefighters do not specifically address the Fourth Claim in their Motion or briefs; they simply argue in a global fashion that they enjoy qualified immunity from suit on all Plaintiff's § 1983 claims. The Court declines Plaintiff's invitation, however, to treat this approach as a waiver of Firefighters' qualified immunity

---

[6] This theory is well established in the Tenth Circuit. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

defense to this claim. *See* Pl.'s Resp. Br. at 11 (urging denial of Motion due to Firefighters' failure to provide legal authority and argument).

The Tenth Circuit has held that an individualized analysis of qualified immunity is not necessary in cases where a plaintiff bases his § 1983 claim on "aggregated officer conduct" and liability could be based on either joint participation or a failure-to-intervene theory. *See Estate of Booker v. Gomez*, 745 F.3d 405, 421-22 (10th Cir. 2014). Plaintiff takes that approach in this case. He pleads alternative claims that each Firefighter either participated in a use of force that collectively violated the Fourth Amendment or failed to prevent other participants from using excessive force. Under either theory of § 1983 liability, Firefighters are entitled to qualified immunity based on Plaintiff's failure to show that the alleged conduct toward Mr. Vanlandingham violated clearly established law. *See id*. at 423 (defendants enjoyed qualified immunity unless their aggregated use of force was unconstitutional and violated clearly established law).

Accordingly, for the same reasons already stated regarding Plaintiff's Fourth Amendment and conspiracy claims, the Court finds that Firefighters are entitled to qualified immunity from Plaintiff's failure-to-intervene claim and that Plaintiff has not stated a plausible § 1983 claim against Firefighters for failing to prevent unconstitutional conduct.

## Conclusion

For these reasons, the Court finds that Plaintiff has failed to state a plausible § 1983 claim against Firefighters based on the alleged unlawful detention or use of unreasonable force against Mr. Vanlandingham, and that Plaintiff has failed to make a sufficient showing

to overcome Firefighters' qualified immunity defense. The Court therefore finds that Plaintiff's action against all Firefighters should be dismissed but that Plaintiff should have an opportunity to amend his pleading upon a timely filed motion.[7]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 32] is **GRANTED**. Plaintiff's action against Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten is **DISMISSED** without prejudice to a motion to further amend his pleading within 14 days from the date of this Order.

**IT IS SO ORDERED** this 28th day of October, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[7] A district court may properly require a plaintiff to file a motion that complies with Fed. R. Civ. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment").