## IN THE UNITED STATES DISTRICT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES KALEB VANLANDINGHAM, Administrator for the Estate of CHARLES LAMAR VANLANDINGHAM, <br><br> Plaintiff, <br><br> v. <br><br> (1) THE CITY OF OKLAHOMA CITY, a municipal corporation; (2) AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC., a foreign corporation; (3) OFFICER BRANDON LEE, an employee of the Oklahoma City Police Department, individually, (4) FIREMAN KEVIN D. ROLKE, an employee of the Oklahoma City Fire Department, individually, (5) FIREMAN TREVOR LEWIS, an employee of the Oklahoma City Fire Department, individually, (6) FIREMAN SHAWN M. MORTON, an employee of the Oklahoma City Fire Department individually, and (7) FIREMAN ZACHARY OSTEN, an employee of the Oklahoma City Fire Department, individually; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 22-CV-209-D <br><br> **THIRD AMENDED COMPLAINT AND JURY DEMAND** |

## <u>THIRD AMENDED COMPLAINT</u>

The Plaintiff, Charles Kaleb Vanlandingham, Administrator for the Estate of Charles Lamar Vanlandingham, for his claims against the above-stated Defendants, alleges and states as follows:

## I.
## <u>PARTIES</u>

1.     Charles Kaleb Vanlandingham is an individual person who resides in Grand Junction, Colorado.

2. Charles Kaleb Vanlandingham was appointed the administrator for the Estate of Charles Lamar Vanlandingham.

3. The City of Oklahoma City ("the City") is a political subdivision organized under the laws of the State of Oklahoma, located in Oklahoma County, Oklahoma. The City maintains a police department and fire department that is tasked with providing public safety and medical support for the public.

4. American Medical Response Ambulance Service, Inc. ("AMR") is a private ambulance corporation that is contracted by EMSA to provide the private ambulance service to the EMSA service area, which includes the location of Mr. Vanlandingham's death.

5. Officer Brandon Lee was an officer with the City police department. Officer Lee is sued in his individual capacity and, upon information and belief, resides in Oklahoma County.

6. Fireman Kevin D. Rolke was a fireman with the City fire department. Mr. Rolke is sued in his individual capacity and, upon information and belief, resides in Oklahoma County.

7. Fireman Trevor Lewis was a fireman with the City fire department. Mr. Lewis is sued in his individual capacity and, upon information and belief, resides in Oklahoma County.

8. Fireman Shawn M. Morton was a fireman with the City fire department. Mr. Morton is sued in his individual capacity and, upon information and belief, resides in Oklahoma County.

9.    Fireman Zachary Osten was a fireman with the City fire department.  Mr. Osten is sued in his individual capacity and, upon information and belief, resides in Oklahoma County.

## II.
## VENUE AND JURISDICTION

10.    The claims asserted herein arise from events that occurred in Yukon, Canadian County, Oklahoma, on September 15, 2019.

11.    On September 14, 2020, the Estate of Charles Lamar Vanlandingham sent an Oklahoma Governmental Tort Claims Act Notice to the City Clerk for the City of Oklahoma City.

12.    The Clerk for the City of Oklahoma City received the notice on September 14, 2020, giving Defendant City of Oklahoma City ninety (90) days to respond.

13.    Defendant City of Oklahoma City never responded to the Estate's Tort Claim.  Therefore, each claim was deemed rejected as of December 13, 2020.  See Okla. Stat. tit. 51, § 157(B).  Thereafter, the Estate had 180 days to file a lawsuit pursuant to Okla. Stat. tit. 51, § 157(B).

14.    The Petition was filed June 10, 2021.

## III.
## FACTS RELATING TO ALL CLAIMS FOR RELIEF

15.    On September 15, 2019, in the early morning hours, Mr. Vanlandingham suffered a grand mal seizure.

16.    Mr. Vanlandingham's friend called 911 to get him help.

17.    In response to the 911 call, paramedics for AMR arrived on the scene first.

18.     Paramedics for AMR were in charge of the scene because they were the only responder on scene and the call was for medical help.

19.     While coming out of the seizure, Mr. Vanlandingham was in a postictal state.

20.     As a result of this postictal state, Mr. Vanlandingham was disoriented and confused.

21.     However, Mr. Vanlandingham was conscious and verbally responsive.

22.     After the seizure and while still in a postictal state, a paramedic for AMR attempted to wrestle with and restrain Mr. Vanlandingham's arms behind his back.

23.     Mr. Vanlandingham was confused and did not want to be restrained with his arms behind his back.

24.     Mr. Vanlandingham tried to pull away from the paramedic for AMR.

25.     There was no medical purpose for this kind of restraint and it was contrary to reasonable medical standards.

26.     Mr. Vanlandingham was not a danger to anyone or himself during his postictal state.

27.     Paramedics for AMR then called for assistance from Oklahoma City Police Department and the Oklahoma City Fire Department falsely alleging that Mr. Vanlandingham was combative and aggressive with them.

28.     The Oklahoma City Fire Department arrived at the scene shortly after the call for assistance from paramedics for AMR.

29.     The responding firemen were Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten.

30.     In an affront to common medical procedures, protocol standards, good public service, and the constitutional rights of free citizens, Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten immediately entered the room, manhandled Mr. Vanlandingham, and tackled him to the ground.

31.     Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten did nothing to assess the situation or speak with any involved parties before tackling Mr. Vanlandingham to the ground.

32.     The Defendant firemen did not attempt to speak with Mr. Vanlandingham or de-escalate the situation before tackling Mr. Vanlandingham to the ground.

33.     The Defendant firemen tackled and seized Mr. Vanlandingham because they wrongfully, and without a reasonable basis, believed Mr. Vanlandingham was being physically combative with paramedics for AMR.

34.     The Defendant firemen forcibly, and unlawfully, restrained Mr. Vanlandingham because they wrongfully believed he committed or attempted to commit some kind of assault and/or battery upon paramedics for AMR.

35.     There was no reasonable or objective basis for this belief given that Mr. Vanlandingham was simply in a postictal state and did not want his arms restrained behind his back.

36.     There was no medical need to restrain Mr. Vanlandingham in such a way to treat his seizure or render medical aid.

37.     Mr. Vanlandingham's life was not in danger nor was immediate medical care necessary to save his life.

38.     The Defendant firemen would have realized no seizure was lawful or necessary if they had taken the time to assess the situation before tackling and restraining Mr. Vanlandingham.

39.     In restraining Mr. Vanlandingham, the Defendant firemen were acting to incapacitate, detain, and deter Mr. Vanlandingham's movement, not provide reasonable medical care.

40.     In fact, Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten seized Mr. Vanlandingham without ever medically assessing his needs.

41.     That is because medical assistance was not their purpose.

42.     Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten then proceeded to pin Mr. Vanlandingham to the ground facedown.

43.     Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten, collectively and together, held Mr. Vanlandingham's legs, sat on his lower back while pushing down on Mr. Vanlandingham's upper back, placed a knee on Mr. Vanlandingham's shoulder and neck area, and used their hands to press down on the back of Mr. Vanlandingham's head.

44.     All this was done while Mr. Vanlandingham was lying face down on the ground.

45.     No medical aid was provided to Mr. Vanlandingham by the Defendant firemen or paramedics for AMR while Mr. Vanlandingham was pinned to the ground.

46.     There was no attempt to roll Mr. Vanlandingham on his side, place something under his head, or monitor his breathing or vital signs.

47.     While Mr. Vanlandingham was pinned down and struggling to breathe, Officer Brandon Lee with the Oklahoma City Police Department arrived at the scene.

48.     The last update Officer Lee heard from his radio when exiting his car was that Mr. Vanlandingham was being "combative."

49.     Based on that update, Officer Lee entered the home to restrain Mr. Vanlandingham, not provide medical care.

50.     When Officer Lee entered the room where Mr. Vanlandingham was detained, he saw all four Defendant firemen on top of Mr. Vanlandingham.

51.     When Officer Lee arrived on scene, Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten, collectively and together, asked Officer Lee if he had handcuffs.

52.     Officer Lee then took out his handcuffs.

53.     Officer Lee used his handcuffs on Mr. Vanlandingham because he was seizing him for being combative with medical personnel.

54.     No restraint was needed to provide medical care or save Mr. Vanlandingham's life.

55.     Once Officer Lee produced handcuffs, the Defendant fireman seated on Mr. Vanlandingham's back said "give me your arm" to Mr. Vanlandingham and proceeded to use a law enforcement technique to pry one of Mr. Vanlandingham's arms behind his back so that handcuffs could be placed on him.

56.     Once Mr. Vanlandingham's arms were behind his back and held there by the Oklahoma City Fire Department, Officer Brandon Lee handcuffed Mr. Vanlandingham, further restraining Mr. Vanlandingham's movement.

57.     Once the handcuffs were in place, Officer Lee radioed that Mr. Vanlandingham was "in custody" and requested another unit to the scene.

58.     Officer Lee said Mr. Vanlandingham was "in custody" because he and the Defendant firemen were seizing Mr. Vanlandingham based on the false and unreasonable belief that Mr. Vanlandingham attacked or attempted to attack paramedics for AMR.

59.     Mr. Vanlandingham had committed no crime.

60.     Mr. Vanlandingham did not assault, batter, or attempt to attack paramedics for AMR.

61.     There was no lawful justification for Mr. Vanlandingham's seizure.

62.     Mr. Vanlandingham did not want to be seized/restrained.

63.     Nor was such restraint medically necessary to save his life.

64.     Mr. Vanlandingham was forced against his will to submit to the show of force by the Defendant firemen and Officer Brandon Lee.

65.     All Defendants acknowledged that Mr. Vanlandingham was in a postictal state.

66.     Even after handcuffs were in place, no medical aid was provided to Mr. Vanlandingham

67.     At no time after Mr. Vanlandingham was manhandled and taken to the ground by the Defendant firemen, was Mr. Vanlandingham free to move about the house,

free to leave the bedroom, free to seek medical attention elsewhere, or free to leave the grasp of the defendants.

68. It was clear to everyone in the home that Mr. Vanlandingham wanted to be freed from his restraint.

69. It was also clear to everyone in the home that Mr. Vanlandingham's restraint served no medical purpose.

70. During the continued prone restraint while Mr. Vanlandingham was in handcuffs, Officer Brandon Lee tried to nudge the fireman off Mr. Vanlandingham's back "a couple times" to take over the restraint of Mr. Vanlandingham, given that he was now in custody.

71. However, the Defendant fireman refused to move from Mr. Vanlandingham's back, preferring to hold his current custodial position seated and pressing down on Mr. Vanlandingham's back.

72. Officer Brandon Lee then assisted with and supervised the restraint by adding the force and weight from his knee and hand to Mr. Vanlandingham's upper and lower back.

73. Mr. Vanlandingham's detention, and the force being used to restrain him by Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten and Officer Lee, was unlawful and unreasonable.

74. The continued prone restrain went on for minutes.

75. Still no medical treatment was provided to Mr. Vanlandingham.

76. Mr. Vanlandingham repeatedly screamed out in pain and attempted to yell for help while he suffered under the weight of Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Officer Lee, as they continued to pin down Mr. Vanlandingham's legs, arms, hips, back, and head.

77. In response, a member of the Oklahoma City Fire Department coldly yelled "quit" and "hold still" and "you're not going to buck me off."

78. There was a discussion at one point about whether soft restraints should be used instead of handcuffs, demonstrating a less restrictive and more medically useful way to assist a person in medical need.

79. However, this request was denied by a collective agreement between paramedic(s) for AMR, the Defendant firemen, and Officer Lee; preferring instead to keep Mr. Vanlandingham restrained in handcuffs.

80. This decision was made because in the eyes of Defendants, Mr. Vanlandingham was in custody and seized.

81. Even after being handcuffed, no effort was made to roll Mr. Vanlandingham on his side, place something under his head, or monitor his breathing or vital signs.

82. Upon information and belief, Mr. Vanlandingham remained in this facedown position under the crushing weight of Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten for over ten (10) minutes while no medical assistance was provided.

83. Officer Lee arrived and added to this restraint during the final two (2) to three (3) minutes of this life ending ordeal.

84.     During this final two (2) to (3) minutes, while still in a facedown prone position, Mr. Vanlandingham's legs were raised to his butt by the Defendant firemen and Officer Brandon Lee in a "hogtie" position.

85.     This facedown "hogtie" position, with hands cuffed behind his back, further restricting Mr. Vanlandingham's air flow.

86.     This "hogtie" position served no medical purpose.

87.     Paramedics for AMR, acting within the scope of their employment, encouraged and requested Mr. Vanlandingham's continued restraint.

88.     Furthermore, paramedics for AMR failed to assess Mr. Vanlandingham's medical needs or maintain or monitor Mr. Vanlandingham's airway and breathing during his facedown "hogtied" restraint.

89.     Paramedics for AMR had final medical decision-making authority at the scene that night.

90.     Paramedics for AMR had the most medical training of all parties involved and they had a duty to use reasonable medical care in their treatment of Mr. Vanlandingham.

91.     Paramedics for AMR, despite having the ability to do so, did nothing to alleviate, cure, or monitor the deadly restrictions on Mr. Vanlandingham's air flow.

92.     In fact, Paramedics for AMR, despite having the ability to do so, did nothing to offer any medical assistance or treatment to Mr. Vanlandingham.

93.     Instead, paramedics for AMR made the situation even more dangerous by administering a sedative to Mr. Vanlandingham.

94.     The sedative, coupled with the body weight on his back compressing his lungs, further restricted Mr. Vanlandingham's ability to draw breath.

95.     The decision to administer a sedative was medically unreasonable given the circumstances of Mr. Vanlandingham's restraint.

96.     Eventually, following the sedative, Mr. Vanlandingham lost consciousness and went limp.

97.     Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Officer Lee did not get off Mr. Vanlandingham's back until after he lost consciousness and went limp.

98.     Immediately after Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Officer Lee got off of Mr. Vanlandingham's back, there was a discussion amongst Officer Lee, the Defendant firemen, and AMR personnel about whether they were going to "press charges" against Mr. Vanlandingham.

99.     This is because the purpose of Mr. Vanlandingham's restraint was custodial incapacitation, and did not serve a medical purpose.

100.    Seconds after the discussion about seeking charges against Mr. Vanlandingham, paramedics for AMR and the individual Defendants discovered that Mr. Vanlandingham stopped breathing.

101.    This was the first and only time a medical assessment of Mr. Vanlandingham was conducted since his restraint began.

102.    Paramedics for AMR and the Defendant firemen then rushed to begin chest compressions to revive Mr. Vanlandingham.

103. However, their efforts were delayed because Officer Brandon Lee had to take time to remove two sets of handcuffs he had placed on Mr. Vanlandingham before the medical resuscitation could begin.

104. Mr. Vanlandingham ultimately died on the floor of his friend's home without ever being transported to a hospital.

105. Mr. Vanlandingham's last words were grunts and groans, "Daaaaaad" and "help."

106. Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Officer Brandon Lee did nothing to assess Mr. Vanlandingham's need for medical treatment or maintain or monitor Mr. Vanlandingham's airway and breathing during his facedown restraint.

107. This is because their purpose was not to render aid, but rather to deter his movement, force him to submit to their show of force, and incapacitate him based on their wrongful belief that Mr. Vanlandingham was being combative.

108. Mr. Vanlandingham's death was avoidable, and he should not be dead right now.

109. Acting jointly, the employees of AMR and the City, at a minimum, negligently provided medical treatment and failed to use reasonable standards of care to treat Mr. Vanlandingham.

110. Additionally, Firemen Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Officer Brandon Lee, while operating under color of law, violated Mr.

Vanlandingham's constitutional rights by unlawfully seizing Mr. Vanlandingham and by using excessive force during his custodial detention.

111.    Because of the wanton, malicious, reckless, and/or negligent acts of the Defendants, Mr. Vanlandingham suffered physical and mental injuries in the form of pain and suffering, the loss of his life, and his Estate has had financial losses in the form of lost wages and other end of life expenses.

## IV.
## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF – Unlawful Seizure Under 42 U.S.C. § 1983**
**(against all individual Defendants)**

Paragraph Nos. 1-111 are re-alleged and adopted as if set forth at length.

112.    The conduct described herein constitutes a violation of Mr. Vanlandingham's right as a citizen of the United States, under 42 U.S.C. § 1983, to be free from unreasonable seizure and wrongful arrest.

113.    The Fourth Amendment's requirement that a search and seizure be reasonable was clearly established throughout the United States at the time the conduct herein occurred.

114.    Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Brandon Lee detained Mr. Vanlandingham against his will without probable cause or reasonable suspicion to do so.

115.    Mr. Vanlandingham was denied his liberty to freely end and leave the encounter with law enforcement.

116.    Mr. Vanlandingham had committed no crime.

117.    The want of probable cause is, and was at the time of arrest, evident.

118.    Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Brandon Lee were acting under color of law when the violation of Mr. Vanlandingham's rights occurred because they were clothed with either the actual or apparent authority of the City, a political subdivision of the State of Oklahoma.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

### SECOND CLAIM FOR RELIEF – Excessive Force Under 42 U.S.C. § 1983
### (against all individual Defendants)

Paragraph Nos. 1-118 are re-alleged and adopted as if set forth at length.

119.    The conduct described herein constitutes a violation of Mr. Vanlandingham's right as a citizen of the United States, under 42 U.S.C. § 1983, to be free from unreasonable seizure and a brutal and unnecessary use of force that caused death.

120.    The excessive force took place during an unlawful arrest or seizure.

121.    The Fourth Amendment's requirement that seizures be reasonable was clearly established throughout the United States at the time the conduct herein occurred.

122.    The force used by Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Brandon Lee was unreasonable under the circumstances.

123. Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten violently held Mr. Vanlandingham down with their body weight for over ten (10) minutes while they slowly suffocated him and stopped his heart.

124. Officer Brandon Lee assisted Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten by handcuffing Mr. Vanlandingham's arms behind his back, denying him the ability to use his arms to press up or turn to catch his breath.

125. Once the handcuffs were on, and Officer Brandon Lee announced for all to hear that Mr. Vanlandingham was "in custody," Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zach Osten, and Brandon Lee continued to hold Mr. Vanlandingham down with their body weight and pressed Mr. Vanlandingham's legs to his butt in a "hogtie" position.

126. Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, Zachary Osten, and Brandon Lee were acting under color of law when the violation of Mr. Vanlandingham's rights occurred because they were clothed with either the actual or apparent authority of the City, a political subdivision of the States of Oklahoma.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

### THIRD CLAIM FOR RELIEF – Civil Conspiracy to Violate/Deprive Constitutional Rights Under 42 U.S.C. § 1983 (against all individual Defendants)

Paragraph Nos. 1-126 are re-alleged and adopted as if set forth at length.

127. The individual Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive the Plaintiff of his constitutional rights, including his right to be free from unlawful arrest and excessive force.

128. The individual Defendants, acting in concert, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

129. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above - such as tackling Mr. Vanlandingham to the ground, pinning him there under the body weight of four (4) firefighters and one (1) police officer, handcuffing his arms behind his back, using a "hogtie" position, and continuing to sit on Mr. Vanlandingham's back after being secured by handcuffs while Mr. Vanlandingham slowly died - and each was an otherwise willful participant in this joint activity.

130. As a direct and proximate result of the illicit agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated and he suffered injuries, including by not limited to loss of liberty, physical harm, emotional distress, and the loss of his life.

131. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and/or deliberate indifference to the rights of Mr. Vanlandingham.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

## FOURTH CLAIM FOR RELIEF –
### Failure to Intervene Under 42 U.S.C. § 1983
### (against all individual Defendants)

Paragraph Nos. 1-131 are re-alleged and adopted as if set forth at length.

132. In the manner described above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

133. As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm but failed to do so.

134. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and/or willful indifference to the clearly established constitutional rights of Mr. Vanlandingham.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

### FIFTH CLAIM FOR RELIEF – Municipal Liability Under 42 U.S.C. § 1983 (against the City)

Paragraph Nos. 1-134 are re-alleged and adopted as if set forth at length.

135.    The actions of each of the individual Defendants, and other parties described herein, were undertaken pursuant to policies, practices, and/or customs of the City.

136.    The policies, practices, and/or customs described in this Complaint were maintained and implemented by the City with deliberate indifference to the constitutional violations likely to result.

137.    In particular, the City failed to train its officers and firefighters on when to use restraint on postictal patients.

138.    The City failed to train its officer and firefighters on how to restrain postictal patients.

139.    The City failed to train its officers and firefighters on how to maintain airway and breathing of a citizen while detained in a prone position.

140.    Upon information and belief, the City had no written policies, procedures or guidelines concerning appropriate restraint procedures for postictal patients.

141.    Upon information and belief, the City had no written policies, procedures or guidelines concerning the use of prone restraint or the use of a "hogtie" position.

142.    The failure to have written policies and procedures regarding these fundamental aspects of law enforcement procedure is further evidence of an unconstitutional failure to train and supervise in deliberate indifference to the harms likely to result therefrom.

143.    Finally, the City ratified the unconstitutional conduct of the individual Defendants by failing to take action to correct the misconduct when it came to their attention.

144.    Upon information and belief, the City reviewed the conduct described above and affirmatively cleared the officers and firefighters involved.

145.    Unfortunately, Officer Brandon Lee, in conjunction with other City of Oklahoma City officers, later used prone restraint again to detain a suspect on March 27, 2020.

146.    The restraint, kneeling on the citizens back with his hand cuffed behind his back and legs pinned against his buttocks, resulted in another death in City of Oklahoma City custody.

147.    This incident, coupled with what happened to Mr. Vanlandingham, demonstrates a pattern of behavior or course of conduct for City of Oklahoma City employees.

148.    There is a causal nexus between the policies, practices, and customs and Plaintiff's damages and injuries described herein.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

### SIXTH CLAIM FOR RELIEF – Negligence Under Oklahoma Law
### (against the City and AMR)

Paragraph Nos. 1-148 are re-alleged and adopted as if set forth at length.

149. The conduct described herein constitutes a violation of Mr. Vanlandingham's rights under Oklahoma law to be free from negligence.

150. Defendants owed a duty of care to Mr. Vanlandingham to provide reasonable care at the time of his medical need.

151. Defendants violated that duty by, at a minimum, unreasonably restraining Mr. Vanlandingham, keeping him facedown with weight on his back for over ten (10) minutes, failing to maintain and monitor Mr. Vanlandingham's airway and breathing, and by administering a sedative after his prolonged restraint.

152. These actions collectively caused Mr. Vanlandingham's death.

153. At the time of Mr. Vanlandingham's death, the Oklahoma City firefighters and the police officer involved in the incident were employed by and working on behalf of the City of Oklahoma City, a political subdivision of the State of Oklahoma.

154. The above-referenced firefighters and police officer were performing their actions within the scope of their employment at the City of Oklahoma City.

155.    With respect to the Oklahoma City firefighters and Officer Lee, this claim is being raised in the alternative to the constitutional claims under 42 U.S.C. § 1983 because at a minimum their actions were negligent.  However, a clear reading of the facts also demonstrates their actions were also intentional, with malice and/or willful deliberate indifference to the clearly established constitutional rights of Mr. Vanlandingham.

156.    Additionally, the paramedics involved, who had final medical decision-making authority at the scene, were employed by and working on behalf of AMR.

157.    The referenced paramedics were performing their actions within the scope of their employment at AMR.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against all individual Defendants for an amount that will reasonably compensate him for his damages, punitive damages in an amount to exemplify Defendants and deter them and others similarly situated, a reasonable attorney fee, costs of the action and all other relief to which Plaintiff may be entitled.

**ATTORNEY'S LIEN CLAIMED**

**JURY TRIAL DEMANDED**

Respectfully submitted,


/s/ W. Brett Behenna
W. BRETT BEHENNA, OBA #30485
BEHENNA GOERKE KRAHL & MEYER
210 Park Ave. Suite 3030
Oklahoma City, Oklahoma 73102
Main Telephone: 405-232-3800
Email: bb@lawfirmokc.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on the 16th day of November, 2022, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Katie Goff
Richard N. Mann
Assistant Municipal Counselors
200 N. Walker, 4th Floor
Oklahoma City, OK  73102
Katie.goff@okc.gov
Richard.mann@okc.gov
*Attorneys for Defendant,*
*City of Oklahoma City*

Chris J. Collins
Stacey Haws Felkner
Collins, Zorn, Jones & Wagner
429 N.E. 50th St., 2nd Floor
Oklahoma City, OK  73105-1815
cjc@czwlaw.com
shf@czwlaw.com
*Attorneys for Defendant,*
*Officer Brandon Lee*

Nathan E. Clark
Denelda L. Richardson
Rhodes, Hieronymus, Jones,
   Tucker & Gable, PLLC
Two W. 2nd Street, Suite 1000 (74103-3131)
P. O. Box 21100
Tulsa, OK  74121-1100
nclark@rhodesokla.com
drichardson@rhodesokla.com
*Attorneys for Defendant, American*
*Medical Response Ambulance Service, Inc.*

/s/ W. Brett Behenna
W. Brett Behenna