IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) CHARLES KALEB VANLANDINGHAM, )
Administrator for the Estate of CHARLES )
LAMAR VANLANDINGHAM, )
)
Plaintiff, )
)
vs. ) Case No. CIV-22-209-D
)
(1) CITY OF OKLAHOMA CITY, )
a municipal corporation; )
(2) AMERICAN MEDICAL RESPONSE )
AMBULANCE SERVICE, INC., a )
foreign corporation, )
(3) OFFICER BRANDON LEE, an employee )
of the Oklahoma City Police Department, )
individually, )
(4) FIREMAN KEVIN D. ROLKE, an )
employee of the Oklahoma City Fire )
Department, individually, )
(5) FIREMAN TREVOR LEWIS, an )
employee of the Oklahoma City Fire )
Department, individually, )
(6) FIREMAN SHAWN M. MORTON, an )
employee of the Oklahoma City Fire )
Department, individually, )
(7) FIREMAN ZACHARY OSTEN, an )
employee of the Oklahoma City Fire )
Department, individually, )
)
Defendants. )

## MOTION OF DEFENDANT BRANDON LEE TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT
## AND BRIEF IN SUPPORT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Brandon Lee requests this Court dismiss all claims against him made in the Third Amended Complaint (Doc. 45) filed by Plaintiff Charles Kaleb Vanlandingham (Plaintiff). Dismissal

is appropriate because the Third Amended Complaint fails to state any claim upon which relief may be granted against Defendant Lee. A brief in support of this motion is attached.

**BRIEF IN SUPPORT OF DEFENDANT LEE'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

This case arises out of the September 15, 2019 death of Plaintiff's decedent Charles Lamar Vanlandingham (Vanlandingham) following a seizure. Mr. Vanlandingham's friend called 911 requesting assistance. (Doc. 45, ¶16). Paramedics, firefighters and Defendant Lee, who is an OCPD police officer, responded to the call. As the Third Amended Complaint notes, Officer Lee was the last Defendant to arrive. (Doc. 45, ¶¶ 47-50). He was also the Defendant with the least medical training. (Doc. 45, ¶90). When Lee arrived, other Defendants had already taken Vanlandingham to the ground and were attempting to restrain him. (Doc. 45, ¶22, ¶30, ¶¶42-43). As soon as Lee arrived on the scene, the Defendant Firefighters asked Lee to handcuff Vanlandingham. (Doc. 45, ¶¶51-52). The paramedics also requested that Vanlandingham be restrained. (Doc. 45, ¶87). While there was a discussion at one point between paramedics about whether it would be safe to place Vanlandingham is soft restraints rather than handcuffs, see, Doc. 45, ¶¶78-79, there was no "collective agreement" to use handcuffs. Instead, one of the paramedics, who Plaintiff specifically alleges had final medical decision-making authority at the scene, see, Doc. 45, ¶89, made the decision to leave Vanlandingham in handcuffs.

On October 28, 2022, the Court granted the Motion to Dismiss filed by Defendants Rolke, Lewis, Morton, and Osten (Doc. 32), finding there was no Fourth Amendment violation because there was no factual basis to suggest Firefighters were reacting to or

investigating possible criminal activity. See, Doc. 41, p. 7. However, the Court gave Plaintiff an opportunity to amend the complaint. The Third Amended Complaint suffers from the same defect as the Second Amended Complaint. Although Plaintiff has now included several speculative statements about Officer Lee's intent when he placed handcuffs on Vanlandingham, the basic factual allegations have not changed. Officer Lee was requested to respond to a medical emergency, he walked into a scene in which medical personnel were struggling to restrain Vanlandingham in order to provide medical treatment, and, at the request of the medical personnel, he assisted in the efforts to restrain Vanlandingham. As the Court recognized in its prior order, "the Firefighters asked Officer Lee to assist them in restraining Mr. Vanlandingham, not the other way around." Doc. 41, p. 7. Therefore, the claims against Officer Lee should be dismissed.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Securities and Exchange Commission v. Shields*, 744 F. 3d 633, 640 (10th Cir. 2014), quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged. *Shields* at 640, quoting *Iqbal* at 678; *Hall v. Witteman*, 584 F. 3d 859, 863 (10th Cir. 2009). Plaintiffs must nudge the claims across the line from conceivable or speculative to plausible. *Frey v. Town of Jackson*, 41 F. 4th 1223, 1232 (10th Cir. 2022). Allegations that are "merely consistent

with a defendant's liability" stop short of that line. *Id.*, quoting *Ashcroft* at 678. In considering a motion to dismiss, the Court must accept as true all well-pleaded *factual allegations* in the complaint and view them in the light most favorable to the plaintiff. However, when the complaint involves *legal conclusions,* the tenet that the Court should accept the allegations as true "is inapplicable to those conclusions." *Gonzales v. Trevino,* 42 F. 4th 487, 491 (10th Cir. 2022); *Safe Streets Alliance v. Hickenlooper,* 859 F. 3d 865, 878 (10th Cir. 2017), quoting *Shields* at 640.

The degree of specificity necessary to establish plausibility and fair notice depends on the type of case and on the context in which the motion was filed. *Robbins v. DHS*, 519 F. 3d 1242, 1248 (10th Cir. 2008). When federal constitutional claims are alleged, to which the defendants are entitled to raise the defense of qualified immunity, this requires sufficient allegations to plausibly show both that a defendant violated the plaintiff's constitutional rights, and that those rights were clearly established at the time of the plaintiff's injury. *Id* at 1249. Collective and generalized allegations are insufficient to overcome an assertion of qualified immunity at the motion to dismiss stage. *Walker v. Mohiuddin*, 947 F. 3d 1244, 1249 (10th Cir. 2020). Instead, a plaintiff must identify specific actions taken by particular defendants that violated his clearly established rights. *Id.,* citing *Pahls v. Thomas*, 718 F. 3d 1210, 1228 (10th Cir. 2013).

## ARGUMENT AND AUTHORITY

As the Court previously recognized, the viability of Fourth Amendment claims for unlawful seizure and/or excessive force is determined by the capacity in which a defendant is acting rather than his job title. Doc. 41, p. 8, citing *McKenna v. Edgewell,* 617 F. 3d

4

432, 439-440 (6th Cir. 2010) (Fourth Amendment claim turned on whether police officers "acted in a law enforcement (e.g. investigative or prosecutorial) capacity" or emergency-medical-response capacity). Additionally, the focus should be on an officer's actions, rather than speculation regarding whether his intent was to enforce the law or provide medical assistance. *Estate of Barnwell v. Grigsby,* 801 Fed. Appx. 354, 370 (6th Cir. 2020).

In *Barnwell*, the decedent's girlfriend called 911 to report he had taken the drug Flexeril and was acting combative. As in the instant case, the paramedics asked the defendant police officers at the scene to handcuff Barnwell because he was being combative and the paramedics needed to provide medical treatment. *Id.* at 358. The court held the defendant officers were entitled to qualified immunity on the unlawful restraint claim because the officers did not "seize" the decedent when they restrained him in order to provide emergency medical treatment. *Id.* at 369, citing *Peete v. Metropolitan Government of Nashville and Davidson County*, 486 F. 3d 217 (6th Cir. 2007). The defendant officers "were not acting to enforce the law, deter, or incarcerate;" rather, they "held Barnwell down and handcuffed him because he was resisting their attempts to help him in a medical emergency." *Barnwell* at 369. See also, *Pena v. Givens*, 637 Fed. Appx. 775, 781 (5th Cir. 2015) (Even police officers' use of restraint does not implicate the Fourth Amendment if they are acting in an emergency-medical response capacity).

In the instant case, the allegations of the Third Amended Complaint make it clear Officer Lee did not undertake any criminal investigation before walking into the medical scene or before being asked to help restrain Vanlandingham. The information received by Officer Lee from dispatch that Vanlandingham was acting "combative" towards medical

providers, see Doc. 45, ¶48, is not atypical behavior in the context of seizures and does not require the Court to accept Plaintiff's legal assumption that Lee only acceded to the Firefighters' request that Lee handcuff Vanlandingham in order to investigate possible criminal activity.

Even if the Court finds Plaintiff has alleged a Fourth Amendment violation against Officer Lee, however, the claims against Lee should be dismissed on the grounds of qualified immunity based on the analysis of *Aldaba v. Pickens*, 844 F. 3d 870 (10th Cir. 2016) (*Aldaba II*). In *Aldaba II,* as in the instant case, the defendant officers' contact with the decedent (Leija) was predicated upon a request from medical personnel for "assistance with a disturbed patient." *Id.* at 875. After trying to talk to Leija, who was irrational and trying to leave the hospital against medical advice, the defendant officers tased and tried to handcuff Leija to allow medical personnel to treat him. *Id.* at 875-876. While the officers were trying to handcuff Leija, a nurse injected Leija with Haldon and Ativan. *Id* at 876. Leija went limp and the medical staff were unable to revive him. The cause of death was determined to be respiratory insufficiency secondary to pneumonia, which was exacerbated by his struggle with the defendant officers. *Id.*

The Tenth Circuit initially upheld the district court's denial of the qualified immunity on the excessive force claim, in *Aldaba v. Pickens*, 777 F. 3d 1148 (10th Cir. 2015) (*Aldaba I*). The Court found the use of the taser was unreasonable because "Mr. Leija did not commit any crime, much less a severe crime" and the only threat Mr. Leija posed was "the threat he posed to himself." *Id.* at 1158. Under this analysis, Plaintiff might arguably have stated a Fourth Amendment claim in the instant case. However, this

6

analysis was subsequently overruled. In *Pickens v. Aldaba*, 577 U.S. 972, 136 S. Ct. 479, 193 L.Ed. 2d 347 (2015), the Supreme Court granted certiorari, vacated the judgment and remanded the case for further consideration in light of *Mullenix v. Luna*, 577 U.S. 7, 136 S.Ct. 305, 193 L.Ed. 2d 255 (2015). On remand, the Tenth Circuit held the defendant officers were entitled to qualified immunity on the Fourth Amendment excessive force claim, stating:

> Here, the three law-enforcement officers were not arresting Leija. Instead, they were assisting his medical providers, who needed to control him so they could provide emergency care. Leija was beyond reason and if allowed to leave the hospital would face death—so said his doctor. Unlike the officers in the three cases above,[1] the law-enforcement officers here tried to calm Leija and Tasered him only after their other efforts had failed. Undoubtedly, they faced a difficult situation, and no nearby medical provider advised against using the Taser. We have found no case presenting a similar situation. We certainly cannot say that every reasonable officer would know that the Fourth Amendment condemned using a Taser to avoid a full-out physical confrontation with a patient whose life depended on immediate treatment. No case renders a Fourth Amendment violation "beyond debate."
>
> Finally, the Estate relies on a line of cases in which plaintiffs alleged that law-enforcement officers had used excessive force against persons suffering from mental illness or diminished capacity. As with the above cases, these cases did not involve medical providers standing nearby while officers used a Taser to subdue a person temporarily out of his mind and needing life-assisting medical treatment. Instead, these additional cases involve force used to detain persons for non-medical reasons. With this key difference in

---

[1] The cases referenced by the Court are *Casey v. City of Federal Heights,* 509 F. 3d 1278 (10th Cir. 2007) (involving the use of a taser against a nonviolent misdemeanor suspect); *Cavanaugh v. Woods Cross City,* 625 F. 3d 661 (10th Cir. 2010) (involving the use of a taser against an unarmed individual while responding to a nonemergency domestic-violence call); and, *Cruz v. City of Laramie,* 239 F. 3d 1183 (10th Cir. 2001) (involving the use of hog-tie restraints against an individual of diminished capacity).

mind, we cannot say that clearly established law informed the officers that their actions would violate the Fourth Amendment. *Aldaba II* at 879.

The above language from *Aldaba II* clearly supports dismissal of the excessive force claim against Defendant Lee. Not only did "no nearby medical provider advise against using" handcuffs, the Defendant Firefighters specifically requested Officer Lee to handcuff Mr. Vanlandingham. See, Doc. 24, ¶28. Like the paramedics in *Peete v. Metropolitan Government of Nashville and Davidson County*, 486 F. 3d 217 (6th Cir. 2007), Officer Lee was not "acting to enforce the law, deter, or incarcerate" Mr. Vanlandingham; instead Lee was "attempting to help him" in response to a call that Vanlandingham was "experiencing an epileptic seizure and needed medical attention." See, *Peete* at 222.

The Tenth Circuit did not separately address the unlawful seizure claim in *Aldaba II* because the district court had previously granted summary judgment on that claim, finding probable cause existed to take Leija into protective custody based on his mental incompetence and the threat he posed to his own health. See, *Aldaba I* at 1153. Thus, even if the Court is willing to accept Plaintiff's legal conclusion that Officer Lee took Vanlandingham into "custody" when he placed Vanlandingham in handcuffs, Lee had probable cause to do so based on the threat Vanlandingham posed to his own safety by resisting treatment while in a postictal state. Additionally, if the Court is willing to accept Plaintiff's allegations that the Defendant Firefighters were acting in a "law enforcement" capacity when they attempted to restrain Vanlandingham, see, Doc. 45, ¶¶33-34, ¶39-41, ¶80, ¶99, ¶107, ¶110 and ¶114, then Officer Lee is entitled to qualified immunity under *Oliver v. Woods*, 209 F. 3d 1179 (10th Cir. 2000). As *Oliver* recognizes, "effective law

enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Oliver* at 1191, quoting *United States v. Hensley*, 469 U.S. 221, 231, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985).

As *Aldaba II* recognizes, cases involving the use of force to detain individuals for non-medical reasons do not provide much guidance to officers in cases like the instant case, where force was used at the behest of a medical provider attempting to treat an individual who was "temporarily out of his mind." See also, *Thompson v. Cope*, 900 F. 3d 414, 422-423 (7th Cir. 2018) ("[W]e do not think a paramedic (or his lawyer) reasonably familiar with circuit and Supreme Court precedent would have understood that the Fourth Amendment prohibition of unreasonable searches and seizures applies to treatment in the field during a medical emergency.").

The Sixth Circuit reached a similar conclusion in *Estate of Hill v. Miracle*, 853 F. 3d 306, 313 (6th Cir. 2017), finding that "no appellate court has previously provided any guidance on how to assess objective reasonableness in the present *atypical* situation of a medical emergency." The facts of *Hill* are analogous to the instant case. Four paramedics were unable to physically restrain Hill, whose health was rapidly deteriorating and who was unresponsive to commands to relax. *Id.* at 315. The Court held the defendant officer was entitled to qualified immunity, stating:

> At the time of the alleged violation, no reasonable officer would have known that using a taser on an individual who was undergoing a medical emergency, posed a risk to the responders' safety, and needed to be subdued in order for

9

medical personnel to render life-saving assistance violated that person's constitutional rights. In other words, Hill has not pointed us to any caselaw that demonstrates a "prior articulation of a prohibition" against the type of force exerted against him. *Estate of Hill* at 316.

If it is not unreasonable for an officer to use a *taser* to subdue an individual in order to allow medical personnel to provide treatment, it clearly should not be unreasonable for an officer to use a lesser degree of force such as temporarily handcuffing an individual. More to the point, handcuffing an individual at the request of medical personnel to facilitate treatment is not barred by clearly established Tenth Circuit or Supreme Court precedent.

Plaintiff's failure to state a Fourth Amendment claim against Officer Lee also dooms his claims for conspiracy and failure to intervene. To establish a conspiracy under §1983, a plaintiff must prove (1) an agreement and concerted actions between the defendants and (2) an actual deprivation of constitutional rights. *Shimomura v. Carlson*, 811 F. 3d 349, 353, 359, citing *Tonkovich v. Kansas Board of Regents*, 159 F. 3d 504, 533 (10th Cir. 1998). Assuming an agreement does exist, the agreement must be illegal to support liability. *Frasier v. Evans,* 992 F. 3d 1003, 1014 (10th Cir. 2021). *Frasier* at 1025. Therefore, proof that defendants formed an agreement or conspired to engage in lawful activities—such as attempting to provide medical treatment to an individual in a postictal state—is inadequate to support a conspiracy claim. Additionally, as this Court recognized, where there is no clearly established law that the alleged object of the defendants' conspiracy was actually unconstitutional the defendants are entitled to qualified immunity on the conspiracy claim as well as the underlying constitutional claims. Doc. 41, pp 10-

11, citing *Frasier* at 1024 and *Hinkle v. Beckham County Commissioners*, 962 F. 3d 1204, 1231 (10th Cir. 2020).

To establish a claim for failure to intervene, a plaintiff must show the defendant officer observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene. *Jones v. Norton*, 809 F. 3d 564, 576 (10th Cir. 2015). Thus, in order for there to be a failure to intervene, it logically follows that there must be an underlying constitutional violation. *Id.* In the context of qualified immunity, it is not enough to plead that a defendant had an affirmative duty to intervene "to prevent the violation of Plaintiff's constitutional rights." See, Doc. 24, ¶70. The underlying right itself must be clearly established. *Harris v. Mahr*, 838 Fed. Appx. 339, 343 (10th Cir. 2020).

## CONCLUSION

As the argument and authority cited above demonstrates, Plaintiff's Third Amended Complaint fails to state any claim upon which relief can be granted against Defendant Brandon Lee. Therefore, the claims against Officer Lee should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

s/ Stacey Haws Felkner
Chris J. Collins, OBA No. 1800
Stacey Haws Felkner, OBA No. 14737
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone: (405) 524-2070
E-mail: cjc@czwlaw.com
  shf@czwlaw.com

ATTORNEYS FOR DEFENDANT OFFICER BRANDON LEE, individually

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

W. Brett Behenna
BEHENNA, GOERKE, KRAHL & MEYER
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102
Email: bb@lawfirmokc.com
*Attorney for Plaintiff*

Katie Goff
Richard N. Mann
Assistant Municipal Counselor
City of Oklahoma City
200 N. Walker Avenue, Suite 400
Oklahoma City OK 73102
Email: Katie.goff@okc.gov
Richard.mann@okc.gov
*Attorneys for Defendants City of Oklahoma City,*
 *Fireman Kevin D. Rolke, Fireman Trevor Lewis,*
  *Fireman Shawn M. Morton and Fireman Zachary Olsten*

Nathan E. Clark
Denelda L. Richardson
RHODES HIERONYMUS JONES
 TUCKER & GABLE
P.O. Box 21100
Tulsa, OK 4121-1100
Email: nclark@rhodesokla.com
 drichardson@rhodesokla.com
*Attorneys for Defendant Air Medical Response*
       *Ambulance Service, Inc.*

s/ Stacey Haws Felkner
Stacey Haws Felkner