IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES KALEB VANLANDINGHAM, Administrator for the Estate of Charles Lamar Vanlandingham, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF OKLAHOMA CITY, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-22-209-D |

**O R D E R**

Before the Court are Motions to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Kevin D. Rolke, Trevor Lewis, Shawn M. Morton, and Zachary Osten [Doc. No. 48] and Defendant Brandon Lee [Doc. No. 49] under Fed. R. Civ. P. 12(b)(6). Defendants Rolke, Lewis, Morton, and Osten (collectively, "Firefighters") are employees of the Oklahoma City Fire Department, and Defendant Lee is an Oklahoma City police officer, who responded to an emergency call regarding Plaintiff's decedent, Charles Lamar Vanlandingham ("Mr. Vanlandingham"). In this action under 42 U.S.C. § 1983, Plaintiff claims that Firefighters and Officer Lee violated, conspired to violate, and failed to prevent others from violating, Mr. Vanlandingham's Fourth Amendment rights to be free from an unlawful seizure and excessive force.

By their Motions, Firefighters and Officer Lee assert that the Third Amended Complaint fails to state plausible § 1983 claims against them and that they are entitled to

qualified immunity. Plaintiff has filed response briefs [Doc. Nos. 55 and 56], and Defendants have replied [Doc. Nos. 59 and 60]. Thus, the Motions are ripe for decision.

The Court's consideration of the Motions begins with its prior order granting a motion to dismiss the Second Amended Complaint without prejudice to amendment. *See* 10/28/22 Order [Doc. No. 41] ("Order"). That Order sets out the standard of decision and governing law, summarizes Plaintiff's allegations and arguments, and applies pertinent legal principles to the alleged facts. Briefly stated, the Court found: 1) Plaintiff based his Fourth Amendment claims against Firefighters on a theory that they were acting in a law enforcement capacity rather than as emergency medical responders, but his pleading lacked factual support for this theory; 2) in any event, Firefighters were entitled to qualified immunity because Plaintiff failed to show their alleged conduct violated clearly established law; and 3) absent a constitutional violation, no conspiracy or failure-to-intervene claim could be stated. The current Motions assert that Plaintiff has not cured these deficiencies by the amendment of his pleading.

## Plaintiff's Allegations[1]

The Third Amended Complaint revises the events described in prior pleadings and adds new details. To show that Firefighters engaged in law enforcement conduct, Plaintiff now alleges that Firefighters did not arrive on the scene of Mr. Vanlandingham's seizure in response to his friend's 911 call for emergency medical assistance but, instead, responded to a call from paramedics to assist them after Mr. Vanlandingham resisted their

---

[1] Consistent with the standard of decision, the factual allegations of Plaintiff's pleading are accepted as true, but conclusory allegations without supporting facts are disregarded.

treatment efforts. Plaintiff states that Firefighters and Officer Lee both received the paramedics' call, but Firefighters arrived first and immediately began working to restrain Mr. Vanlandingham. Plaintiff alleges that, from this time until Mr. Vanlandingham later became unresponsive, Firefighters and Officer Lee were not attempting to provide emergency medical assistance but were responding to his possible assault of the paramedics.

Specifically, the Third Amended Complaint relates the following version of events. The paramedics were employed by a private ambulance service, Defendant American Medical Response Ambulance Service, Inc. ("AMR"), and were first responders to a 911 call for medical help. Mr. Vanlandingham "was in a postictal state" of a grand mal seizure and "was disoriented and confused" but "conscious and verbally responsive." *See* 3d Am. Compl. ¶¶ 19-21. A paramedic attempted to restrain Mr. Vanlandingham's arms behind his back (contrary to medical standards), but he did not want to be restrained and pulled away. "Paramedics for AMR then called for assistance from Oklahoma City Police Department and the Oklahoma City Fire Department falsely alleging that Mr. Vanlandingham was combative and aggressive with them." *Id*. ¶ 27.

Firefighters arrived on the scene shortly after this call. Immediately upon entering the room where Mr. Vanlandingham was located, they "tackled him to the ground" without pausing "to assess the situation or speak with any involved parties." *Id*. ¶¶ 30-31. Firefighters acted in haste on a mistaken belief that "Mr. Vanlandingham was being physically combative with paramedics for AMR" and he had "committed or attempted to commit some kind of assault and/or battery upon paramedics for AMR." *Id*. ¶¶ 33-34.

3

Firefighters worked together to restrain Mr. Vanlandingham in an effort "to incapacitate, detain, and deter [his] movement." *Id*. ¶¶ 39-41. They "pin[ned] Mr. Vanlandingham to the ground facedown" and acting together, "held [his] legs, sat on his lower back while pushing down on [his] upper back, placed a knee on [his] shoulder and neck area, and used their hands to press down on the back of [his] head." *Id*. ¶¶ 42-44.

Officer Lee arrived after Mr. Vanlandingham was pinned facedown with all four Firefighters on top of him. "The last update Officer Lee heard from his radio when exiting his car was that Mr. Vanlandingham was being 'combative.'" *Id*. ¶ 48. Firefighters immediately asked Officer Lee for handcuffs, and when he produced them, the firefighter sitting on Mr. Vanlandingham's back "use[d] a law enforcement technique to pry one of Mr. Vanlandingham's arms behind his back so that handcuffs could be placed on him." *Id*. ¶ 55. While Firefighters held Mr. Vanlandingham's arms behind his back, Officer Lee applied the handcuffs, and he then "radioed that Mr. Vanlandingham was 'in custody' and requested another unit to the scene." *Id*. ¶¶ 56-57. Like Firefighters, Officer Lee was acting on a mistaken "belief that Mr. Vanlandingham attacked or attempted to attack paramedics for AMR." *Id*. ¶ 58.

The prone restraint of Mr. Vanlandingham – under the weight of all four Firefighters pressing down on his legs, hips, back, and head – continued more than ten minutes. During that time, Mr. Vanlandingham "repeatedly screamed out in pain and attempted to yell for help." *Id*. ¶ 76. During the last two or three minutes, Officer Lee had arrived and increased the level of restraint by handcuffing Mr. Vanlandingham and "adding the force and weight from [Officer Lee's] knee and hand to Mr. Vanlandingham's upper and

4

lower back." *Id*. ¶¶ 72, 83. Also during these two or three minutes, Firefighters and Officer Lee raised Mr. Vanlandingham's legs "to his butt . . . in a 'hogtie' position. This facedown 'hogtie' position, with hands cuffed behind his back, further restrict[ed] Mr. Vanlandingham's air flow." *Id*. ¶¶ 84-85. At no time during the restraint did Mr. Vanlandingham receive a medical assessment or monitoring of his airway or breathing, and instead, the paramedics increased the dangerousness of the situation by administering a sedative drug. Mr. Vanlandingham lost consciousness and went limp. Firefighters and Officer Lee then got off Mr. Vanlandingham's back, and the group proceeded to discuss whether to "press charges" against him. *Id*. ¶¶ 97-98.

Plaintiff alleges that the following sequence of events ended the encounter:

> Seconds after the discussion about seeking charges against Mr. Vanlandingham, paramedics for AMR and the individual Defendants discovered that Mr. Vanlandingham stopped breathing. This was the first and only time a medical assessment of Mr. Vanlandingham was conducted since his restraint began. Paramedics for AMR and the Defendant firemen then rushed to begin chest compressions to revive Mr. Vanlandingham. However, their efforts were delayed because Officer Brandon Lee had to take time to remove two sets of handcuffs he had placed on Mr. Vanlandingham before the medical resuscitation could begin. Mr. Vanlandingham ultimately died on the floor of his friend's home without ever being transported to a hospital.

*Id*. ¶¶ 100-104.

### Plaintiff's Claims

Plaintiff asserts the same § 1983 claims for Mr. Vanlandingham's injuries and death in the Third Amended Complaint that he brought in the Second Amended Complaint: First Claim, a violation of Mr. Vanlandingham's Fourth Amendment right to be free from unlawful seizure by restraining him "against his will without probable cause or reasonable

suspicion" (*id.* ¶ 114); Second Claim, a violation of Mr. Vanlandingham's Fourth Amendment right to be free from excessive force when Firefighters held him "down with their body weight for over ten (10) minutes while they slowly suffocated him and stopped his heart" and when Officer Lee assisted them by "handcuffing Mr. Vanlandingham's arms behind his back, denying him the ability to use his arms to press up or turn to catch his breath" (*id.* ¶¶ 123-24); Third Claim, a conspiracy among Firefighters and Officer Lee to deprive Mr. Vanlandingham of his constitutional rights to be free from unlawful arrest and excessive force (*id.* ¶ 127); and Fourth Claim, a failure by "one or more of the Defendants" to intervene "during the constitutional violations described herein" to prevent a violation of Mr. Vanlandingham's constitutional rights by others, despite having a reasonable opportunity to do so. *Id.* ¶¶ 132-33.

## Discussion

**A.     Constitutional Violation**

As previously discussed, Plaintiff seeks to proceed on his claims that Firefighters and Officer Lee acted in violation of the Fourth Amendment under a theory that all were acting as law enforcement officers during the encounter with Mr. Vanlandingham. As to Firefighters, Plaintiff relies on case law holding that the Fourth Amendment applies when a state actor is serving a law enforcement function. *See* Pl.'s Resp. Firefighters' Mot. at 8-9 (citing, e.g., *McKenna v. Edgell*, 617 F.3d 432, 438-39 (6th Cir. 2010); *Peete v. Metro. Gov't of Nashville*, 486 F.3d 217, 221-22 (6th Cir. 2008); *Judd v. City of Baxter*, 780 F. App'x 345, 349 (6th Cir. 2019) (unpublished); *Pena v. Givens*, 637 F. App'x 775, 781 (5th Cir. 2015) (unpublished)). Accepting this principle, Firefighters and Officer Lee

challenge the sufficiency of Plaintiff's claims on the ground that his factual allegations show they were assisting paramedics responding to a medical emergency and not working to address criminal activity. That is, Firefighters contend Plaintiff has not sufficiently alleged they stepped into a law enforcement role, and Officer Lee contends Plaintiff's allegations show he stepped out of that role and was serving a non-law enforcement function during his encounter with Mr. Vanlandingham.

Upon consideration, the Court finds that the Third Amended Complaint contains minimally sufficient factual allegations to state plausible Fourth Amendment claims against Firefighters and Officer Lee. Accepting the facts currently alleged, and drawing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has now provided a factual basis for his theory that Firefighters and Officer Lee were acting in a law enforcement role while restraining and using force against Mr. Vanlandingham. Plaintiff alleges facts from which one could infer that the individual defendants were reacting to allegations of aggression against the paramedics that might constitute a criminal offense under Oklahoma law. *See* Okla. Stat. tit. 21, § 650.4.[2] Plaintiff states enough facts (although barely) from which a reasonable person could find that Defendants were not acting as part of a medical response team to subdue a disoriented patient for treatment, but as part of a law enforcement team to neutralize and detain an aggressor against medical

---

[2] Under this criminal statute, it is felony offense if a person "without justifiable or excusable cause and with intent to do bodily harm, commits any assault, battery or assault and battery upon the person of a medical care provider who is performing medical care duties." Okla. Stat. tit. 21, § 650.4(A). The term "medical care provider" includes "ambulance attendants and operators, paramedics, [and] emergency medical technicians." *Id*. § 650.4(B).

care providers. Thus, the Third Amended Complaint states plausible claims against Firefighters and Officer Lee that should be allowed to proceed to discovery.[3]

The Court recognizes that Plaintiff alleges the paramedics called for assistance in handling a combative patient, and case law supports the view that restraints imposed for this purpose do not constitute a "seizure" under the Fourth Amendment.[4] The Court also acknowledges that Plaintiff's allegations are unclear and, at times, even inconsistent with a law enforcement theory. For example, the Third Amended Complaint states that the paramedics, acting as medical responders, "were in charge of the scene" and "requested Mr. Vanlandingham's continued restraint." *See* 3d Am. Compl. ¶¶ 18, 87. The Court rejects Firefighters' argument, however, that Plaintiff alleges they "were attempting medical aid" or "trying to administer medical care." *See* Firefighters' Mot. at 6; Reply Br. at 2. The Court also rejects Officer Lee's argument that Plaintiff should not be allowed to infer "Lee only acceded to the Firefighters' request that Lee handcuff Vanlandingham in order to investigate possible criminal activity." *See* Lee's Mot. at 5-6.

---

[3] Of course, as discussed *infra*, if the individual defendants were acting in a law enforcement role and the facts reported to or observed by them established probable cause to believe a crime was occurring, they could lawfully seize Mr. Vanlandingham under the Fourth Amendment.

[4] *See Peete*, 486 F.3d at 222 (firefighters and paramedics did not violate Fourth Amendment by restraining individual where "[t]hey were not acting to enforce the law, deter or incarcerate"); *Estate of Barnwell v. Grigsby*, 801 F. App'x 354, 370 (6th Cir. 2020) (unpublished) (police officers did not seize combative patient by handcuffing him while "serv[ing] a medical-emergency function, rather than a law-enforcement function"); *Pena*, 637 F. App'x at 781 (treatment provider's restraint of patient during emergency response was not Fourth Amendment seizure).

8

Accepting the factual allegations of the Third Amended Complaint and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to show Firefighters' and Officer Lee's alleged conduct violated the Fourth Amendment. Therefore, the Court finds the Third Amended Complaint states plausible § 1983 claims of unlawful seizure and excessive force against Firefighters and Officer Lee.

**B.    Qualified Immunity**

The second step in assessing the defense of qualified immunity requires a determination whether Plaintiff has shown the Fourth Amendment rights asserted in his § 1983 claims were clearly established in September 2019. Recall that a "clearly established" right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See* Order at 8-9 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per curiam); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). Because "specificity is especially important in the Fourth Amendment context" (*Mullenix*, 577 U.S. at 12), the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Wesby*, 138 S. Ct. at 590 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

In response to Firefighters' Motion, Plaintiff identifies no Supreme Court, Tenth Circuit, or other published appellate decision that would have made clear to a reasonable person in Firefighters' position that their alleged conduct toward Mr. Vanlandingham was governed by the Fourth Amendment. *See Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion . . . provides little support for the notion that the law

9

is clearly established on [a] point."); *see also Grissom v. Roberts*, Grissom v. Roberts, 902 F.3d 1162, 1168 (10th Cir. 2018) (an unpublished, nonprecedential opinion is only useful "to show that [a legal] proposition is unsettled"). Even if a statement of general legal principles would suffice, Plaintiff has not identified any precedential case law that would have provided notice to Firefighters that they must comply with the Fourth Amendment. Plaintiff does not cite any published decision in which the conduct of a firefighter, paramedic, or other non-law enforcement officer who intervened in possible criminal conduct during an emergency call was held to Fourth Amendment standards. The Court therefore finds that Plaintiff has not met his burden to overcome Firefighters' qualified immunity from suit on his § 1983 claims for unlawful detention of, or use of unreasonable force against, Mr. Vanlandingham.

The Court reaches a different conclusion regarding Officer Lee. Accepting that Plaintiff has sufficiently stated § 1983 claims against him in a law enforcement capacity, the Court finds that clearly established law in 2019 informed Officer Lee that his alleged use of force against Mr. Vanlandingham would violate the Fourth Amendment. More than 20 years ago, the Tenth Circuit held that police officers may not constitutionally use a hog-tie restraint against an individual of diminished capacity, which Mr. Vanlandingham arguably was during his postictal state. *See Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001). A few years later, the court of appeals found "the law was clearly established that applying pressure to [a detainee's] upper back [for about three minutes], once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions." *See Weigle*

*v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008).   Given this case law, Plaintiff has sufficiently shown at this stage of the case that Officer Lee is not entitled to qualified immunity on the § 1983 excessive force claim.[5]

Officer Lee's qualified immunity from liability on Plaintiff's unlawful arrest claim presents a closer question, and one that Plaintiff fails squarely to answer.   Plaintiff argues in a conclusory fashion that Officer Lee lacked an objectively reasonable basis to conclude there was probable cause to arrest Mr. Vanlandingham for committing a crime.   *See* Pl.'s Resp. Lee's Mot. at 14-15.[6]   Plaintiff recognizes, however, that "a police officer who acts in reliance on what proves to be the flawed conclusions of a fellow officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable."   *Id*. (quoting *Oliver v. Woods*, 209 F.3d 1179, 1191 (10th Cir. 2000)). Further, an "arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff."   *Oliver*, 209 F.3d at 1188; *see Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc).   This principle, known as "arguable probable cause," protects an officer from liability if his "conclusions

---

[5] The Court acknowledges Officer Lee's argument that Plaintiff provides insufficient facts to establish that the hog-tie restraint in this case fits the definition of the one prohibited by *Cruz*.   However, the alleged hog-tie combined with pressure on Mr. Vanlandingham's back while held in a prone position for an extended period are sufficiently similar to instances of excessive force found in case law to provide clear notice to Officer Lee that his alleged conduct would violate the Fourth Amendment.

[6] "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).

11

rest on an objectively reasonable, even if mistaken belief, that probable cause exists." *See Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014); *accord A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016); *Shimomura v. Carlson*, 811 F.3d 349, 353 (10th Cir. 2015); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Accepting Plaintiff's factual allegations in this case, Officer Lee was dispatched in response to a paramedic's call regarding a combative patient, and arrived on a scene where four firefighters were physically restraining an individual on the ground and requesting handcuffs. Although Plaintiff avoids facts regarding Mr. Vanlandingham's conduct, we know that it took four men to hold him down and one referred to Mr. Vanlandingham's behavior as trying to "buck [the firefighter] off." *See* 3d Am. Compl. ¶ 77. Under the circumstances alleged in the Third Amended Complaint, the Court finds that Officer Lee had arguable probable cause to believe the criminal offense of attempting to assault a medical care provider in violation of § 650.4(A) had been committed by the restrained suspect. Therefore, Officer Lee is entitled to qualified immunity on Plaintiff's § 1983 claim of unlawful arrest asserted in the First Claim of the Third Amended Complaint.

**C.   Conspiracy**

Plaintiff asserts that Firefighters and Officer Lee conspired among themselves and with other unidentified individuals to violate the Fourth Amendment. For the reasons stated in the prior Order, the Court's finding that Plaintiff's § 1983 claims against Firefighters are barred by qualified immunity requires the dismissal of the § 1983 conspiracy claim against them as well. Because Firefighters are entitled to qualified immunity on Plaintiff's Fourth Amendment claims "based on the absence of clearly

established law, it necessarily follows that they are also entitled to qualified immunity on his conspiracy claim insofar as it alleges a conspiracy" to violate the Fourth Amendment. *See* Order at 11 (quoting *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir.), *cert. denied*, 142 S. Ct. 427 (2021)). That is, because it was not clearly established in 2019 that it was a violation of the Fourth Amendment for Firefighters to unlawfully arrest or use excessive force against Mr. Vanlandingham, "it ineluctably follows that the law was not clearly established that it was unlawful to conspire to engage in the same [violation]." *Frasier*, 992 F.3d 1024. Accordingly, the Court finds that Firefighters are entitled to qualified immunity from Plaintiff's § 1983 conspiracy claim.

The Court reaches the same conclusion, in part, regarding Officer Lee. Because Plaintiff has not shown that Mr. Vanlandingham's alleged unlawful arrest violated a clearly established right, Plaintiff has not shown the object of any conspiracy to arrest Mr. Vanlandingham was unconstitutional under the Fourth Amendment. Therefore, Officer Lee is entitled to qualified immunity from liability for any such conspiracy.

Regarding an alleged conspiracy to use excessive force, however, the Court finds in the Third Amended Complaint sufficient factual allegations, viewed in the light most favorable to Plaintiff, from which to find that Officer Lee conspired with others to engage in an unconstitutional use of force against Mr. Vanlandingham. *See Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022).[7] Plaintiff has identified legal authority clearly

---

[7] To state a § 1983 conspiracy claim, a plaintiff must "allege specific facts showing an agreement and concerted action among defendants — an agreement upon a common, unconstitutional goal and concerted action taken to advance that goal." *Id*. at 609 (internal quotations and citations omitted). "[B]ecause direct evidence of an agreement to join a

13

establishing that any reasonable officer in Officer Lee's position would have understood the alleged object of the conspiracy – to use force against Mr. Vanlandingham as alleged in Plaintiff's pleading – violated the Fourth Amendment. In short, because Officer Lee is not entitled to qualified immunity on the underlying constitutional claim, he is not entitled to qualified immunity on the conspiracy claim.

**D.      Failure to Intervene**

As previously explained, Plaintiff pleads as his Fourth Claim an alternative theory of § 1983 liability that Firefighters and Officer Lee each failed to prevent others from engaging in conduct that constituted a use of excessive force under the Fourth Amendment. *See* Order at 12. As before, the Court finds that Firefighters are entitled to qualified immunity from this claim because Plaintiff has not shown their alleged failure to intervene violated clearly established law. For the same reasons already stated regarding Plaintiff's Fourth Amendment and conspiracy claims, the Court finds that Firefighters are entitled to qualified immunity from Plaintiff's failure-to-intervene claim.

The Court also finds that Officer Lee is entitled to qualified immunity from this claim. Plaintiff has demonstrated that clearly established law prohibited Officer Lee from participating in a use of excessive force against Mr. Vanlandingham, but he has made no effort to identify clearly established law that would have informed Officer Lee of a duty to intervene to stop Firefighters' use of force against Mr. Vanlandingham. Plaintiff does not argue, for example, "that the duty to intervene in the situation alleged here would have

---

conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id*. (internal quotation omitted).

been obvious to any objectively reasonable law enforcement officer." *See Bledsoe*, 53 F.4th at 617. Therefore, Officer Lee is entitled to qualified immunity on Plaintiff's failure-to-intervene claim.

## Conclusion

For these reasons, the Court finds that Plaintiff has stated plausible § 1983 claims against Firefighters and Officer Lee based on alleged violations of Mr. Vanlandingham's Fourth Amendment rights. The Court also finds, however, that Plaintiff has failed to make a sufficient showing to overcome Firefighters' qualified immunity defense, and thus Plaintiff's action against Firefighters should be dismissed. Further, the Court finds that Officer Lee is entitled to qualified immunity with respect to Plaintiff's unlawful arrest and failure-to-intervene claims, and thus the First Claim and Fourth Claim of the Third Amended Complaint should be dismissed. Because this was Plaintiff's second attempt to state § 1983 claims against the individual defendants, the Court finds that any further opportunity to amend would be futile and the claims barred by qualified immunity should be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Firefighters' Motion to Dismiss Plaintiff's Third Amended Complaint [Doc. No. 48] is **GRANTED** and Defendant Lee's Motion to Dismiss Plaintiff's Third Amended Complaint [Doc. No. 49] is **GRANTED** in part and **DENIED** in part, as set forth herein. All claims against Defendants Rolke, Lewis, Morton, and Osten, and Plaintiff's First and Fourth Claims against Defendant Lee are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that in accordance with the Order of January 5, 2023 [Doc. No. 58], the remaining parties shall confer about appropriate deadlines and submit a proposed scheduling order consistent with the Court's standard case management schedule within 14 days from the date of this Order.

**IT IS SO ORDERED** this 19th day of May, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge