IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLES KALEB VANLANDINGHAM,      )
Administrator for the Estate of              )
CHARLES LAMAR VANLANDINGHAM,   )
                                                          )
          Plaintiff,                                   )
                                                          )          Case No. CIV-22-209-D
v.                                                        )
                                                          )
THE CITY OF OKLAHOMA CITY, *et al.*,  )
                                                          )
          Defendants.                              )

## ORDER

Before the Court are Plaintiff's Motion to Exclude the Opinions of Jim Morrissey [Doc. No. 138][1] and Plaintiff's Motion to Strike Jim Morrissey as an Expert Witness [Doc. No. 139]. Defendant American Medical Response Ambulance Service, Inc. ("AMRAS") filed a combined response [Doc. Nos. 161 and 167], and Plaintiff filed a combined reply [Doc. No. 181]. The matters are fully briefed and at issue. In light of the parties' submissions, including Morrissey's expert report [Doc. No. 138-1] and supplemental report [Doc. No. 161-4], the Court finds that a formal hearing is not necessary.

## BACKGROUND

The facts of the present case are more fully set out in the Court's Order denying Defendant Lee's motion for summary judgment and granting in part and denying in part Defendant City of Oklahoma City's motion for summary judgment [Doc. No. 205] and will

---

[1] Citations to the parties' filings reference the CM/ECF pagination at the top of each page.

not be restated at length. In summary, this litigation arises from the death of Charles Lamar Vanlandingham in September of 2019.

Plaintiff's claims are against Defendants City of Oklahoma City, Officer Brandon Lee, and AMRAS. During discovery, AMRAS disclosed an expert report prepared by Jim Morrisey, EMT-Paramedic, M.A. [Doc. No. 138-1].

In the present motions, Plaintiff contends that Morrissey's report and supplemental report should be stricken for failing to timely comply with FED. R. CIV. P. 26(e)(2). Plaintiff also argues that the opinions offered should be excluded under FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Specifically, Plaintiff contends that Morrissey's opinions are not reliable as he has failed to provide a basis for his opinions.

## LEGAL STANDARD

Rule 702 codifies the Supreme Court's decision in *Daubert* regarding the admissibility of expert opinion testimony and defines the trial court's gatekeeping role. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

In considering whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court determines whether the expert is qualified by "'knowledge, skill, experience, training or education' to render an opinion." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (quoting FED. R. EVID. 702). If so qualified, the Court must then determine whether the expert's opinion is reliable under the principles set forth in *Daubert*, and relevant in that it will assist the trier of fact. *Id.* at 990; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Where expert testimony is found to be both relevant and reliable, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## DISCUSSION

## I.  Morrissey's supplemental report is timely.

Morrissey supplemented his expert report on May 28, 2025. [Doc. No. 161-4]. In it, Morrissey expands on four of his opinions listed in his initial report but predominately provides supplemental explanations for the purported basis of his opinions. Plaintiff contends that Morrissey's supplemental report is untimely under FED. R. CIV. P. 26(e)(2).

Rule 26(e)(2) imposes a duty on expert witnesses to supplement their opinions, extending "both to information included in the [expert] report and to information given

during the expert's deposition." FED. R. CIV. P. 26(e)(2). "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* The disclosures referenced in Rule 26(a)(3) include witness lists, deposition designations, and exhibit lists. FED. R. CIV. P. 26(a)(3)(A)(i)-(iii). These disclosures are to be made "at least 30 days before trial," unless the Court orders otherwise. FED. R. CIV. P. 26(a)(3)(B).

Here, the parties' deadline for final witness and exhibit lists and discovery expired before Morrissey issued his supplemental report. However, Rule 26(a)(3) also refers to the deadline to file deposition designations, which has yet to expire. Accordingly, the Court finds that Morrissey's supplemental report is timely under Rule 26(e)(2). *See Northstar Mgmt., Inc. v. Vorel*, No. CIV-19-260-SLP, Doc. No. 209, at *5-6 (W.D. Okla. Nov. 15, 2022) (deeming expert supplementation timely when it occurred after the deadline to submit final witness and exhibit lists, but before the deadline for the remaining pretrial submissions, to include deposition designations and the parties' final pretrial report).[2]

## II.   *Daubert* Motion

As Plaintiff does not contest Morrissey's qualifications; the issue is whether Morrissey's opinions—as set out in his supplemental report—have a reliable basis in his knowledge and experience in the field of emergency medical services. As one judge in this district explained:

---

[2] Plaintiff did not address whether Morrissey's supplemental report constitutes a proper supplementation under FED. R. CIV. P. 26(e). Thus, the Court does not, and need not, address this issue.

> It is fundamental that, if the basis for an expert's opinions is to be tested for reliability, that basis must be identified in some fashion. What is the industry standard that underlies the opinion? What is the scientific principle which explains a particular phenomena? What is the custom or practice which, applied to the facts of the case, leads to the particular opinion of the expert? What is the aspect of the expert's experience or training that allows him or her to reach a particular conclusion? Absent some identification of the basis for the expert opinion, there is little or no way to test it against any of the guidelines or factors involved in a *Daubert* analysis or to otherwise determine its reliability.

*Threet v. Corr. Health Care Mgmt. of Oklahoma, Inc.*, No. CIV-07-943-HE, 2009 WL 3335596, at *5 (W.D. Okla. Oct. 15, 2009). Or, put more succinctly, it does not suffice "for an expert to say, in effect, 'trust me, I know.'" *Id.* at *4; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) ("[W]itnesses 'relying solely or primarily on experience … must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'") (quoting FED. R. EVID. 702 advisory committee's note (2000 Amendment)).

Plaintiff argues that Morrissey should not be permitted to testify regarding his opinions because he does not identify how his experience in the emergency medicine services field led to his specific opinions or what he relied upon in reaching his opinions. Plaintiff asserts that Morrissey's explanation of the purported basis of his opinions is insufficient, as they are too generalized to test Morrissey's conclusions for their reliability.

5

AMRAS argues that Morrissey's opinions are reliable as he sufficiently delineates the basis for his opinions in his supplemental report. Indeed, AMRAS argues that Morrissey's opinions are based on his extensive knowledge and experience in the field of emergency medical services and the data, documents, and information he was provided regarding the Vanlandingham incident.

Morrissey's supplemental report includes an introduction, summarizing his experience as a licensed paramedic and in the field of emergency medical services; a section on "materials reviewed"; and a summary of events. His supplemental report also contains a list of sixteen bullet points, in which he lists his opinions and observations. After almost every opinion, Morrissey offers one of the following explanations as the basis for his opinion:

1. My opinion is based on the information from the documents provided, the witnesses to the event, and my knowledge based on my education, training, and experience. [Doc. No. 161-4, at p. 7-9].

2. My opinion is based on the information from the documents provided, the witnesses to the events, standard Paramedic textbooks, State of Oklahoma EMS Protocols and my education, training, and experience. *Id.* at p. 6, 8-10.

3. My opinion is based on my years of education, training, and experience in dealing with patients and experience in situations where scene safety [or where the patient presentation] is quickly evolving. My opinion is also based on the information from the documents provided, the witnesses to the events, standard Paramedic textbooks, [and] State of Oklahoma EMS Protocols. *Id.* at p. 6-8, 10.

[Doc. No. 161-4].[3]

Upon review of Morrissey's supplemental report, the Court finds that he, at times, fails to adequately identify the basis of his opinions or explain how certain standards or his experience led to his conclusions. Indeed, opinions reliant upon Basis 1 are merely supported by Morrissey's experience in emergency medical services. Morrissey's experience in emergency medical services, standing alone, is not sufficient to support his opinions. Basis 1 does not explain how Morrissey's experience in the field of emergency medical services led to his opinions, leaving Plaintiff with "little or no way to test [Morrissey's conclusions] against any of the guidelines or factors involved in a *Daubert* analysis or to otherwise determine [their] reliability." *Threat*, 2009 WL 3335596, at *5. For example, Basis 1 is not sufficient to support his opinion that "[r]esponders acted quickly, smoothly and appropriately to the situation at hand, without conflict or disorganization in order to get the patient restrained, lifted onto [the] gurney, then subsequently (and sadly) initiate resuscitative efforts." [Doc. No. 161-4, at p. 9]. Similarly, Basis 1 is inadequate to support his opinion that "it was appropriate for Paramedic Tuttle to assist OKC Fire by drawing up and administering Versed IM as requested." *Id.* at p. 9.

However, the Court finds that Basis 2 is barely sufficient to satisfy the reliability requirement. The main distinction between Basis 1 and Basis 2 is Morrissey's reliance on "standard Paramedic textbooks, [and] State of Oklahoma EMS Protocols."[4] *Id.* at p. 6, 8-

---

[3] The categories of Morrissey's purported bases shall be referred to herein as "Basis 1," "Basis 2," and "Basis 3."

[4] Although the paramedic textbook and the version of the State of Oklahoma EMS Protocols are not specifically identified in Morrissey's opinions that are supported by Basis

7

10. By referring to the protocols and textbook as a basis for his opinion, Morrissey narrowly answers the question of what standards, customs, or practices he is applying to support his opinion. For example, Basis 2 is sufficient to support his opinion that Mr. Everlove's purported suggestion that the paramedics should have fled the scene "could be interpreted as patient abandonment because contact had been established with Mr. Vanlandingham, who was found altered, establishing there was a duty to act. Again, restraining combative patients is not unusual in emergency medical care." *Id.* at p. 9. Basis 2 is also sufficient to support his opinion that "[p]atients with altered mental status are regarded as giving implied consent which means EMS providers are required to deliver appropriate care and transport to the closest, most appropriate healthcare facility." *Id.* at p. 8.

To the extent Plaintiff takes issue with a perceived lack of information or the conclusions Morrissey derived therefrom, Plaintiff may thoroughly cross-examine him at trial. *See Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (where an opposing party asserts perceived weaknesses in an expert's opinion, "the burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinning of the expert's opinion.").

---

2, in his supplemental report under the "materials reviewed" section he appears to identify only one paramedic textbook and one version of protocols that he reviewed and relied upon in drafting his supplemental report. [Doc. No. 161-4, at p. 2]. Indeed, in the "materials reviewed" section he lists the 2018 version of the State of Oklahoma EMS Protocols, and Nancy Caroline's Emergency Care in the Streets (8th ed.), Publisher: Jones & Bartlett. *Id*. Thus, Morrissey's references in Basis 2 and 3 to the paramedic textbook and Oklahoma's EMS Protocols are to these protocols and textbook.

Additionally, the Court finds that Basis 3 is sufficient to support Morrissey's opinions. In Basis 3 Morrissey not only references the protocols and textbook that he is relying upon to support his opinions, but also his experiences in medical emergency services when dealing with "situations where scene safety" or "patient presentation [was] quickly evolving." [Doc. No. 161-4, at p. 6-8, 10]. Thus, Basis 3 not only answers the question of what standards, customs, or practices he is applying by referencing the protocols and textbook, but also explains how his experience in the field of emergency medical services led to his opinions. For example, Basis 3 adequately supports Morrissey's opinion that "[c]hanges in patient status were promptly identified, assessed and appropriately addressed." *Id.* at p. 10. Basis 3 also sufficiently supports Morrissey's opinion that "[t]he Code was appropriately called after 35 minutes when the emergency crews were unable to gain return of spontaneous circulation and only after consulting with the hospital-based emergency physician." *Id.* at p. 10.

Again, Plaintiff's issues with a perceived lack of information or the conclusions Morrissey derived therefrom, are directed to the weight of the evidence, not the reliability of his opinions. Plaintiff may thoroughly cross-examine him at trial. *See Robinson*, 16 F.3d at 1090.

### CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Exclude the Opinions of Jim Morrissey [Doc. No. 138] is **GRANTED in part** and **DENIED in part**. Additionally, Plaintiff's Motion to Strike Jim Morrissey as an Expert Witness [Doc. No. 139], which mirrors the arguments of Plaintiff's *Daubert* motion, is **DENIED** as **MOOT**.

**IT IS SO ORDERED** this 18th  day of March, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge